**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

JASON MEYER,

    Plaintiff,

vs.

JERRY BIRKEY, in his Individual and Official Capacities,

    Defendant.

No. C 14-4034-MWB

**MEMORANDUM OPINION AND ORDER REGARDING OBJECTIONS TO REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

*I.*    **INTRODUCTION**................................................................*2*

*II.*    **LEGAL ANALYSIS** .............................................................*3*
    *A.*    *Applicable Standards*................................................*3*
        *1.*    *Standard of review for a report and recommendation*...........*3*
        *2.*    *Qualified immunity* ..................................................*5*
    *B.*    *Review Of The Report And Recommendation*.......................*8*
        *1.*    *Qualified immunity as to the "removal"*...........................*8*
        *2.*    *Qualified immunity as to the "post-removal" conduct* ........... *12*

*III.*    **CONCLUSION** ................................................................. *16*

## I. INTRODUCTION

In this case pursuant to 42 U.S.C. § 1983, filed May 2, 2014, plaintiff Jason Meyer claims that defendant Jerry Birkey, a Deputy Sheriff for Lyon County, Iowa, violated his constitutional rights. Meyer bases his claims on Birkey's removal of Meyer's two daughters from his home on May 31, 2012, and placement of them in their mother's custody, and on Birkey's alleged failure to follow the procedures for removal set forth in IOWA CODE § 232.79 in doing so. *See* Complaint (docket no. 1). On May 29, 2015, Birkey filed a Motion For Summary Judgment (docket no. 14) in which he argues, *inter alia*, that he is entitled to qualified immunity to Meyer's claims. By Order (docket no. 15), filed May 29, 2015, I referred this action, and all motions pending herein, to United States Magistrate Judge Leonard T. Strand, pursuant to 28 U.S.C. § 636(b)(1)(B), for review of the record and the pleadings, the conduct of any necessary evidentiary hearings, the hearing of any oral argument that may be necessary, and the submission to me of a report and recommended disposition of the case.

Judge Strand filed his Report And Recommendation On Defendant's Motion For Summary Judgment (docket no. 21) on September 17, 2015. In his Report And Recommendation, Judge Strand found that qualified immunity applies and that summary judgment should, therefore, be entered in Birkey's favor. Somewhat more specifically, Judge Strand set forth the relevant facts, most of which were not in dispute, *see* Report And Recommendation at 2-4, and the standards for summary judgment and qualified immunity, *id.* at 4-8. He then considered, in turn, whether Birkey was entitled to qualified immunity for (1) the removal of Meyer's two daughters from Meyer's home based on allegations that Meyer's two sons (who have a different mother from his daughters and who are older than his daughters) were sexually molesting them; and (2) events after the removal, arising from an alleged violation of IOWA CODE § 232.79,

which allegedly deprived Meyer of a hearing on whether the removal of his daughters was appropriate. Judge Strand concluded, "Birkey's act of taking the Girls from Meyer's home and turning them over to their mother is protected by qualified immunity." Report And Recommendation at 10. He also concluded, "Birkey's actions relating to . . . his failure to follow the procedures described in Iowa Code § 232.79 are subject to the doctrine of qualified immunity." *Id*. at 14. Judge Strand determined that these conclusions made it unnecessary to address Birkey's other arguments for summary judgment, which concerned the merits of Meyer's claims, because even if those claims might otherwise have merit, Birkey cannot be held liable for any alleged harm. *Id*. Thus, Judge Strand recommended that summary judgment be granted as to all of Meyer's claims. *Id*.

On October 1, 2015, Meyer filed his Objections To Report And Recommendation (docket no. 25), challenging Judge Strand's conclusions that Birkey is entitled to qualified immunity as to his actions before and after the removal of Meyer's daughters. On October 12, 2015, Birkey filed his Response To The Objections Plaintiff Has Raised To The Magistrate's Report & Recommendation On Summary Judgment (docket no. 26). I must now review Judge Strand's Report And Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II.  LEGAL ANALYSIS
### A.  Applicable Standards
#### 1.  *Standard of review for a report and recommendation*

Where, as here, a party has filed objections to a magistrate judge's report and recommendation, the applicable statute provides for *de novo* review by the district judge, as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). Thus, "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask." *Thomas v. Arn*, 474 U.S. 140, 154 (1985).

If a party files an objection to a magistrate judge's report and recommendation, the district court must "make a de novo determination *of those portions of the report or specified proposed findings or recommendations to which objection is made*." 28 U.S.C. § 636(b)(1) (emphasis added). In most cases, at least where the objecting party is represented by counsel, to trigger *de novo* review, "objections must be timely and specific." *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990); *but see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (suggesting that "general" objections by a *pro se* party may be sufficient to trigger *de novo* review). When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)). Judge Strand did not hold an evidentiary hearing in this case, however, nor did he consider oral arguments. Instead, he considered only the parties' written submissions on Birkey's Motion For Summary Judgment, and I have done the same.

In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (stating that § 636(b)(1) "provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to de novo review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). The Eighth Circuit Court of Appeals has indicated, however, that, at a minimum, a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting that the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). Thus, "clearly erroneous" review applies to the portions of Judge Strand's Report And Recommendation to which no objections were made.

I will review Judge Strand's Report And Recommendations with these standards in mind.

### 2. *Qualified immunity*

As Judge Strand correctly observed, "Qualified immunity is an immunity from suit rather than a mere defense to liability." Report And Recommendation at 6 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). As the Supreme Court very recently explained,

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. --, ---- (2012) (slip op., at 5) (internal quotation marks and alteration omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

*Mullenix v. Luna*, ___ U.S. ___, 2015 WL 6829329, *3 (Nov. 9, 2015). Thus, to determine whether a government official is entitled to qualified immunity, the court ordinarily engages in a twofold inquiry, asking (1) whether there was a deprivation of a constitutional right, and (2) whether the right was clearly established such that a reasonable official would understand that his conduct was unlawful in the situation that he confronted. *Vaughn v. Green County, Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

The parties do not dispute Judge Strand's reliance on *Swipies v. Kofka*, 348 F.3d 701 703 (8th Cir. 2003) (*Swipies I*), in which the court found that a child had been removed in violation of a parent's constitutional rights, for the applicable standard for qualified immunity in this case. I do not believe that doing so involves an improper determination of "'clearly established law at a high level of generality,'" *see Mullenix*, 2015 WL 6829329 at *3 (quoting *al-Kidd*, 563 U.S. at 742), but properly relates to the

particular conduct and specific context at issue, here. *See id.* Therefore, I will also rely on *Swipies I* for the applicable standard in this case.

In *Swipies I*, the Eighth Circuit Court of Appeals explained,

> We have previously noted that in section 1983 actions involving interference with the right to familial integrity, "it is nearly impossible to separate the constitutional violation analysis from the clearly established analysis." *See Manzano v. South Dakota Dep't of Soc. Servs.*, 60 F.3d 505, 511 (8th Cir.1995); *see also Saucier [v. Katz]*, 533 U.S. [194,] 201, 121 S.Ct. 2151 [(2001)] (in "determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established").
>
> Parents have a liberty interest in the care, custody, and management of their children. *See Manzano*, 60 F.3d at 509. This interest can be limited by the state's compelling interest in protecting a child: "the parental liberty interest in keeping the family unit intact is not a clearly established right in the context of reasonable suspicion that parents may be abusing children." *See Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir.), *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). *"[W]hen a state official pursuing a child abuse investigation takes an action which would otherwise unconstitutionally disrupt familial integrity, he or she is entitled to qualified immunity, if such action is properly founded upon a reasonable suspicion of child abuse."* *Manzano*, 60 F.3d at 510–11.

*Swipies I*, 348 F.3d at 703 (emphasis added).

I turn to application of this standard for qualified immunity in this case.[1]

### B. Review Of The Report And Recommendation

Again, Judge Strand considered, in turn, whether Birkey was entitled to qualified immunity for (1) the removal of Meyer's two daughters from Meyer's home based on allegations that Meyer's two sons were sexually molesting them; and (2) events after the removal, arising from an alleged violation of IOWA CODE § 232.79, which allegedly deprived Meyer of a hearing on whether the removal of his daughters was appropriate. Meyer objects to Judge Strand's conclusions on both parts of his claim. I will also consider Meyer's objections in light of these two parts of his claim.

#### 1. Qualified immunity as to the "removal"

As to the "removal," Judge Strand distinguished *Swipies I*, on which Meyer relied, on the ground that "[t]he situation here is significantly different":

> Birkey was aware of a prior allegation [in 2010] that one of the Boys had molested one of the Girls. While the allegation was not proven, it was a serious enough concern that Meyer signed a safety plan [with the Department of Human Services] under which he agreed not to leave the alleged assailant and alleged victim alone together. Clearly, that historical information alone would not have supported an emergency removal on May 31, 2012. However, it is important in light of the information Birkey received on that date. Delores Hughes, the Girls' great-grandmother, told Birkey that Carolyn Hughes, the Girls' grandmother, was concerned that the Boys were molesting the Girls. Among other things, Birkey was told that the Girls had reported

---

[1] No party suggests that Judge Strand stated incorrect standards for summary judgment, so I do not need to repeat those well-settled standards here. *See* FED. R. CIV. P. 56; *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

> sexual abuse to their grandmother and had stated that it occurred the night before. Doc. No. 14-3 at 61. Birkey arranged to have Wilkinson, the Girls' mother, come to the sheriff's office. Wilkinson stated that she, too, had suspicions about sexual abuse. According to Birkey, he then talked with both Delores and Wilkinson about "what made them think" that the Boys were molesting the Girls. Doc. No. 14-3 at 22 (Dep. p. 22).
>
> Birkey's knowledge of the prior allegation, when combined with information that the Girls had reported being sexually abused the night before, distinguishes this situation from that in *Swipies* and gave rise to a reasonable suspicion of child abuse. Moreover, the Girls were still at Meyer's residence, with their alleged assailants, when Birkey received this information. In *Swipies I*, by contrast, the child was no longer in the presence of the alleged threat (Stark) when the deputy removed her from her father's care. 348 F.3d at 703.
>
> Under these circumstances, Meyer himself agrees [in deposition testimony] that it was prudent to separate the Girls from the Boys. . . .
>
> Based on the record before me, I find that Birkey removed the Girls from Meyer's home based on a reasonable suspicion of child abuse. I further find, under these circumstances, that it would not have been clear to a reasonable officer that the removal would be unlawful in the situation Birkey confronted. As such, I conclude that Birkey's act of taking the Girls from Meyer's home and turning them over to their mother is protected by qualified immunity.

Report And Recommendation at 9-11.

Meyer objects to Judge Strand's conclusion that Birkey had a "reasonable suspicion" of child abuse. He contends that Judge Strand (1) put undue weight on the prior abuse allegation from 2010, which was rejected by the Iowa Department Of Human Services (DHS); (2) the more current allegations of abuse were vague; and (3) while he

9

might have agreed, in retrospect, that separation of the girls from the boys was appropriate, the DHS had rejected the allegation of child abuse when Birkey reported it *before* removing the girls. Meyer also objects to Judge Strand's resulting conclusion that Birkey's act of taking the girls from Meyer's home and turning them over to their mother, under these circumstances, was protected by qualified immunity. On *de novo* review, I find that Meyer's objections should be overruled.

First, Judge Strand did not put "undue weight" on the prior allegation of child abuse from 2010 that one of Meyer's sons was abusing one of his daughters. Rather, Judge Strand correctly observed "that historical information alone would not have supported an emergency removal on May 31, 2012." Report And Recommendation at 9. Judge Strand also correctly observed that the 2010 report was important, however, because, despite the finding that *abuse could not be proved* in 2010, the DHS had still advised Meyer that the alleged assailant should not be left alone in a room with the alleged victim, and Meyer had signed a "safety plan" with the DHS in which he agreed not to allow the two children involved to be alone together. *See* Report And Recommendation at 2, 9. This information about the 2010 report, which was known to Birkey on May 31, 2012, would reasonably have heightened his concern and suspicions about a new report of recent child abuse.

Second, Birkey had received reports from family members that the girls had reported to one of them that they had been abused by both boys the night before, raising a reasonable suspicion of *current* abuse, despite Meyer's prior agreement to keep one of the boys away from one of the girls. While the allegations of current abuse that Birkey was able to describe in his deposition were too vague to amount to *proof* of child abuse, Meyer improperly suggests that lack of *proof* of child abuse means that there was lack of "reasonable suspicion" of child abuse. As Judge Strand pointed out in his Report And Recommendation, however,

> The "reasonable suspicion" analysis takes into account the totality of the circumstances and requires more than a hunch, but is "considerably less than proof of wrongdoing by a preponderance of the evidence" and, indeed, is "obviously less" than the showing necessary to establish probable case. *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) [citations omitted].

Report And Recommendation at 7. Upon *de novo* review, I believe that the circumstances known to Birkey were sufficient to mount this relatively low hurdle of "reasonable suspicion" of child abuse.

Third, Meyer suggests that the fact that the DHS "rejected" Birkey's first report of child abuse on May 31, 2012, "weighed heavily against an emergency removal." Meyer's Objection at 10. I conclude that Meyer overlooks the grounds on which the DHS actually rejected Birkey's first report. As Judge Strand explained, and review of the record shows beyond dispute, the first report was "rejected" for the following reasons:

> Rejection Code and Explanation: d not enough information to indicate that the children are not being provided adequate care. There is no information that makes the boys caretakers for the girls and there is no information that indicates that the father had prior knowledge of sexual acting out behavior.

Birkey's Summary Judgment Appendix at 57 (Iowa Department of Human Services Child Protective Service Intake, 05/31/2012); Report And Recommendation at 9. The refusal of the DHS to accept the report because the boys were not the caretakers for the girls does *nothing* to abate a reasonable suspicion that the boys were abusing the girls. Moreover, the DHS responder's suggestion that there was "no information that indicates that the father had prior knowledge of sexual acting out behavior" was plainly wrong— and Birkey knew that it was wrong—in light of the 2010 report of abuse by one of the

11

boys of one of the girls and Meyer's entry into the "safety plan" with the DHS to keep the children in question in the earlier report from being alone together.[2]

Upon *de novo* review, *see* 28 U.S.C. § 636(b)(1), I wholeheartedly agree with Judge Strand's conclusion that, under these circumstances, it would not have been clear to a reasonable officer that the removal of the girls would be unlawful in the situation that Birkey confronted. I also wholeheartedly agree with Judge Strand that, in these circumstances, Birkey's act of taking the girls from Meyer's home and turning them over to their mother is protected by qualified immunity. Meyer's objection to these conclusions is overruled. I also find nothing clearly erroneous in Judge Strand's other findings or conclusions concerning the "removal" to which Meyer has offered no objections. *Grinder*, 73 F.3d at 795.

### 2. *Qualified immunity as to the "post-removal" conduct*

As to the part of Meyer's claim based on "post-removal" conduct, Judge Strand rejected Meyer's claim of a constitutional violation based on IOWA CODE § 232.79. That state statute prescribes the circumstances in which a peace officer can take a child into custody without the consent of a parent, guardian, or custodian, and, further, prescribes certain procedures for providing notice of the removal to the parent, guardian, or custodian, and the court, so that further proceedings can occur. IOWA CODE § 232.79.

Judge Strand rejected Meyer's due process claim based on an alleged violation of this state statute, even though he cited *Swipies v. Kofka*, 419 F.3d 709 (8th Cir. 2005) (*Swipies II*), as recognizing that a right under the United States Constitution to due

---

[2] Although the information does little to indicate the reasonableness of Birkey's suspicions *at the time* that he removed the girls, fairness requires me to mention that the DHS ultimately *did* find that Meyer had committed child abuse by omission in failing to intervene and protect the girls from being abused by the boys as a result of the incident in May 2012, and Meyer does not dispute that fact. *See* Report And Recommendation at 4.

12

process, based on a parent's right to be heard within a meaningful time period after removal of a child, had been violated by a seventeen-day period between the removal of a child and the first hearing on the issue. Report And Recommendation 12 (citing *Swipies II*, 419 F.3d at 717). Judge Strand also recognized that the time between the removal at issue in this case and Meyer's first hearing had been even longer than the period in *Swipies I*. Judge Strand noted, however, that IOWA CODE § 232.79 is violated if an officer removes a child without the consent of a parent and that Birkey did not believe that compliance with that statute was required, where he had the mother's consent to removal of the girls from Meyer's custody into hers, and Meyer made no objection to the removal at the time. *Id*. at 11-13.

More specifically, Judge Strand explained,

> [Birkey] testified that if Meyer would have resisted the removal, he "would have placed a phone call to the county attorney to see what to do next." [docket no. 14-3] at 27 (Dep. p. 43).
>
> Meyer's own deposition testimony about the removal does not contradict Birkey's. At no point did he claim that he expressed any objections about the removal to Birkey. While he stated that Birkey did not give him a choice, Doc. No. 14-3 at 27 at 15 (Dep. p. 47), he did not testify that he said or did anything that might have caused Birkey to believe that Meyer disagreed with Birkey's intended course of action. Indeed, and as noted above, Meyer testified that he agreed that the Girls should not stay with him and the Boys. *Id*. at 12-13 (Dep. pp. 36-37).
>
> Thus, while Meyer's subjective state of mind at the time of the removal may be in dispute, the objective facts that Birkey could have observed at the time of the removal are not. Birkey knew he had the consent of one parent (Wilkinson) and had no information indicating that Meyer disputed the proposed transfer of custody to Wilkinson. Based on those

> undisputed facts, I find that a reasonable officer, confronted with the situation, would not have known that it was unlawful to either (a) fail to follow the procedures set forth in Iowa Code § 232.79 or (b) [fail to] take other steps to afford Meyer a reasonable opportunity to be heard. Indeed, long before the events at issue here, the Eighth Circuit held that it is not a constitutional deprivation for a law enforcement officer to transfer custody of a child from one parent to the other when the surrendering parent voluntarily cedes custody, even if that parent felt threatened at the time. *Zakrzewski v. Fox*, 87 F.3d 1011, 1015 (8th Cir. 1996) (citing *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981)). Thus, even if Birkey was wrong, and made an error of judgment, the error was reasonable. As such, qualified immunity applies. *See, e.g., Habiger [v. City of Fargo]*, 80 F.3d [289,] 295 [(8th Cir. 1996)] (qualified immunity "allows officers to make reasonable errors"); *Borgman [v. Kedley]*, 646 F.3d [518,] 522 [(8th Cir. 2011)] (officers are given room for "mistaken judgments").

Report And Recommendation 13-14. For these reasons, Judge Strand concluded that Birkey was also entitled to qualified immunity for his alleged failure to follow the procedures prescribed in IOWA CODE § 232.79.

Meyer objects to any findings that he consented to the removal, because he contends that Birkey admitted that Meyer contested the abuse allegations at the time of the removal, calling them unproven and "BS." Meyer contends that Birkey went to his home with the intent to remove the girls and that he was not required to formally object to Birkey making that removal, because his objections to the allegations of abuse were sufficient to invoke all the procedures required by IOWA CODE § 232.79. Meyer also points out that Birkey did not ask him whether or not he consented to removal of the girls, but simply informed him that he was going to remove the girls. Meyer objects to the conclusion that his "silence" could be construed as "consent."

14

Again, upon *de novo* review, I find that Birkey is entitled to qualified immunity concerning his alleged failure to comply with IOWA CODE § 232.79. Meyer seems to rely in his Objections, as he did in his resistance to summary judgment, on his contention that he did not consent to the removal or that there are, at least, genuine issues of material fact as to whether or not he consented. I agree with Judge Strand's conclusion, however, that Birkey reasonably believed, in light of undisputed facts, that Meyer was not objecting to removal of the girls. Although Meyer initially asserted that the allegations of abuse were "BS," nothing shows that he objected to keeping the girls separate from the boys, when Birkey said they should do so "until we get it figured out." Report And Recommendation at 13. Just as importantly, Meyer has not pointed to any construction of IOWA CODE § 232.79 by any court—and I have found none—that would have clearly established that Birkey was wrong or unreasonable in his belief that one parent's consent to the removal, even if the other parent objected, meant that compliance with the statute's procedural requirements was not required. *See Mullenix*, ___ U.S. at ___, 2015 WL 6829329 at *3 (explaining that, to be "clearly established," "'existing precedent must have placed the statutory or constitutional question beyond debate'" (quoting *al-Kidd*, 563 U.S. at 741)). Rather, as Judge Strand recognized, the Eighth Circuit Court of Appeals had held, as a matter of federal constitutional law, that it is not a constitutional deprivation for a law enforcement officer to transfer custody of a child from one parent to the other when the surrendering parent voluntarily cedes custody, even if that parent felt threatened at the time. *See* Report And Recommendation at 13-14 (citing *Zakrzewski*, 87 F.3d at 1015, in turn citing *Wise*, 666 F.2d at 1333).

Thus, once again, upon *de novo* review, *see* 28 U.S.C. § 636(b)(1), I wholeheartedly agree with Judge Strand's conclusion that, under these circumstances, Birkey is entitled to qualified immunity for his "post-removal" failure to comply with IOWA CODE § 232.79. I also find nothing clearly erroneous in Judge Strand's other

findings or conclusions concerning the "post-removal" conduct to which Meyer has offered no objections. *Grinder*, 73 F.3d at 795.

### III. CONCLUSION

Upon the foregoing,

1. Plaintiff Meyer's October 1, 2015, Objections To Report And Recommendation (docket no. 25) are **overruled**;

2. I **accept** Judge Strand's September 17, 2015, Report And Recommendation On Defendant's Motion For Summary Judgment (docket no. 21);

3. Pursuant to Judge Strand's recommendations and my review,

    a. Defendant Birkey's May 29, 2015, Motion For Summary Judgment (docket no. 14) is **granted** as to all of Meyer's claims, on the ground that Birkey is entitled to qualified immunity; and

    b. Judgment shall enter accordingly.

**IT IS SO ORDERED**.

**DATED** this 18th day of November, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA